UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
NICHOLAS EGAN,                                    Civil Action No.:

                    Plaintiff,

    -against-                                   **COMPLAINT**

5665 SUNRISE HIGHWAY CORP. and
THOMAS CAMPBELL,                                  **JURY TRIAL REQUESTED**

                    Defendants.
---------------------------------------------------------------------------X

      Plaintiff, Nicholas Egan ("Plaintiff"), by his attorneys, Law Offices of Yale Pollack, P.C., as and for his Complaint against Defendants, 5665 Sunrise Highway Corp. and Thomas Campbell (collectively "Defendants"), alleges as follows:

### PRELIMINARY STATEMENT

      1.    Plaintiff brings this action for Defendants' violations of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA"), New York State Human Rights Law, New York Executive Law, §296 *et seq.* ("NYSHRL"), the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA") and New York's Paid Family Leave Law ("PFL"), for which he seeks compensatory damages, interest, reasonable attorneys' fees and costs, liquidated damages and other damages, and all other appropriate legal and equitable relief.

      2.    Plaintiff also brings this action for Defendants violations of New York Labor Law ("NYLL") for Defendants' failure to pay him his wages and commissions earned during his employment, and for slander.

### JURISDICTION AND VENUE

      3.    Jurisdiction of this Court over Plaintiff's ADA and FMLA claims is invoked pursuant to 28 U.S.C. §1331.

4. Jurisdiction of this Court over Plaintiff's NYSHRL, PFL, NYLL and slander claims is invoked pursuant to 28 U.S.C. §1367(a) as the claims are so related to Plaintiff's federal claims as to form the same case or controversy under Article III of the United States Constitution.

5. Venue is appropriate in this Court under 28 U.S.C. §1391(b) as the acts or events giving rise to the claims occurred within Eastern District and the residence of Defendants is within the Eastern District.

6. On or about May 12, 2022, Plaintiff filed his discrimination and retaliation claims with the Equal Employment Opportunity Commission ("EEOC").

7. On December 21, 2022, the EEOC issued Plaintiff his Notice of Right to Sue.

## PARTIES

8. Plaintiff is an individual who resides in the County of Suffolk, State of New York.

9. Upon information and belief, 5665 Sunrise Highway Corp. ("Sunrise") is a domestic corporation authorized to do business in the State of New York, with its principal place of business located in the County of Suffolk.

10. Sunrise's principal business is the sale, repair and financing of automobiles.

11. At all relevant times mentioned herein, Defendant Thomas Campbell ("Campbell") was an officer and the owner of Sunrise.

12. At all relevant times mentioned herein, Campbell had the power to hire, fire, and control the wages and working conditions of Plaintiff.

13. Campbell had authority to, and did in fact, exercise operational control within Sunrise.

14. Campbell set the manner by which Plaintiff was to be paid while employed by Sunrise.

15. At all times relevant, Defendants were covered by the ADA, FMLA, NYSHRL, PFL and NYLL.

## FACTUAL ALLEGATIONS

16. Plaintiff began his employment with Sunrise as a salesman in October 2012, in which capacity he worked until June 2018.

17. Plaintiff returned to Sunrise in June 2019 as a Sales and Finance Manager.

18. In this role, Plaintiff was advised by Campbell that he would receive $500 per week as a salary, plus commissions.

19. Throughout his employment, Campbell knew that Plaintiff had been in a motorcycle accident in the Summer of 1986.

20. Plaintiff's motorcycle accident resulted in him having severe nerve damage to his S1 nerve, and herniated and bulging discs, which affected his ability to, among other things, walk correctly without the use of medications.

21. Campbell would verbally abuse Plaintiff, making statements such as him being a "drug addict" or a "junkie" due to the medications he had to take so he could walk.

22. Campbell also revealed Plaintiff's medical condition to others within Sunrise, including his wife, Deborah, sons, Thomas and Paul, and other co-workers.

23. There we numerous instances where Campbell would return to work after lunch intoxicated and would mock Plaintiff for the medications he took, which he had to take to treat his disability.

24. Not only would Campbell abuse Plaintiff in front of others during work hours, but he would also send Plaintiff inappropriate text messages, seemingly while Campbell were also intoxicated.

25. There were also many incidents where Plaintiff was mocked by Sunrise's service manager, Patrick Panyko, who would make comments such like Campbell did, such as calling Plaintiff a "drug addict," "junkie" and "pill popper."

26. Although Campbell was aware of the comments made by Mr. Panyko, rather than correct his inappropriate conduct, Campbell would instead chime in and join in mocking Plaintiff.

27. When Plaintiff complained to Campbell about the conduct that was being engaged in by Campbell and Mr. Pankyo, his complaint would dismissed by Campbell, making statements such as "stop being such a baby."

28. When Covid-19 started to break out in New York in 2020, Campbell implemented mandates for his workers, including Plaintiff, to violate the Executive Orders issued by the Governor.

29. Specifically, Campbell told Sunrise employees that if any of them were to test positive for Covid that they were not to tell anyone and that they were to just keep working.

30. Campbell further stated that the office was not going to be closed for any reason.

31. Campbell advised that if someone was feeling too sick that they could stay home for two or three days but that they were not to disclose that they may have Covid to anyone else, but just to state that they had a stomach bug.

32. If any officials came into the building, Campbell directed the employees to tell them that they that they were only performing financing work and not sales work when sales work was actually be performed.

33. When Plaintiff contracted Covid in December 2020, as per Campbell's mandate, he was required to work and requested to be paid while working from home.

34. Not only did Campbell illegally deny his request for pay while performing services

4

for Sunrise, but he also told him that if he did not work, he should find another job.

35. As someone who contracted Covid, Plaintiff was entitled pay under the Families First Coronavirus Response Act and/or New York State's Paid Leave for Covid-19, which Defendants failed to provide.

36. Plaintiff continued to do all that was required of him in his position, never once receiving a negative performance evaluation or any indication that his job was otherwise in jeopardy.

37. Based on the treatment he continued to endure at work, Plaintiff had to start taking medications for anxiety.

38. Plaintiff lost approximately twenty pounds in a month based on the stress he was enduring at work.

39. Plaintiff's doctor diagnosed Plaintiff with post-traumatic stress disorder.

40. Plaintiff advised Campbell of his diagnosis, which just resulted in Campbell telling Plaintiff that "this is just an excuse," you are a "pussy" and to "man up."

41. Then, on November 7, 2021, Plaintiff's life completely changed.

42. On that date, Plaintiff's wife was admitted to the hospital for kidney failure.

43. While in the hospital, Plaintiff advised Campbell of his wife's situation and that he would need to take time off to be with her.

44. Despite this, at no time was Plaintiff ever provided with notification of his rights under the FMLA or PFL from Defendants.

45. Instead, Defendants took this as an opportunity to try and replace Plaintiff.

46. Campbell initially advised Plaintiff that he was not going to be paid for his time while out of the office, nor was he going to get paid on his personal deals.

47. On November 11, 2021, Campbell placed an advertisement on Craigslist for Plaintiff's position.

48. When Plaintiff's wife was released from the hospital after being admitted for about one week, she needed around the clock monitoring as she could not care for herself.

49. Again, despite relaying this information to Campbell, Plaintiff received no notice of his rights under the FMLA or PFL.

50. While Plaintiff was taking unpaid leave to care for his disabled wife, Campbell terminated his employment on November 29, 2022.

51. Campbell claimed that Plaintiff's situation was becoming an "inconvenience" for Campbell.

52. When Plaintiff asked why it was an inconvenience to Campbell for almost losing his wife, he responded "that's your problem, not mine."

53. As for his compensation, in addition to the salary of $500 per week, Plaintiff was to receive a minimum of $250 in commissions plus another $50 for every warranty sold, as well as another $50 if it was a previous repossession if the sale went through Campbell's New York State licensed finance company, Buy Here, Pay Here.

54. Plaintiff was also to receive a minimum of $300 or 10% of the total profit of a sale, whichever was greater, plus another $200 if he completed on the paperwork on his sales.

55. Finally, Plaintiff was to receive $150 for finance work plus another $200 for completing paperwork for other salespeople's outside lenders, or another $50 if it went through Campbell's finance company, North Shore Equities.

56. Plaintiff's average earnings with Defendant were about $2,500 per week.

57. Since his termination, Plaintiff still has not received the earned wages to which he

is entitled, including his salary and commissions, in violation of the NYLL.

58. After Plaintiff was terminated, he discovered that Campbell had told customers of Plaintiff that he was fired for stealing and doing drugs at work.

59. Campbell's statements were knowingly false.

60. When Plaintiff called Campbell to request that he stop disparaging him to others, Campbell hung up the phone on Plaintiff.

## COUNT ONE
### (Failure to Reasonably Accommodate in Violation of the ADA)

61. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

62. Plaintiff's conditions as described in this Complaint constitute disabilities within the meaning of the ADA.

63. Plaintiff's disabilities, when active, substantially limit the operation of his major bodily functions, including functions of the brain and neurological system.

64. Plaintiff's disabilities, when active, substantially limit Plaintiff's abilities not only to work, but to learn, read, concentrate and think.

65. Plaintiff's wife's conditions as described in this Complaint, including her kidney failure, constitute a disability within the meaning of the ADA.

66. Plaintiff's wife's disabilities, when active, substantially limit the operation of her major bodily functions, including functions of the immune system, reproductive system, and normal cell growth.

67. Plaintiff's wife's disabilities, when active, substantially limit Plaintiff's wife's abilities not only to work, but to eat, sleep, engage in sexual relations, reproduce, think, and concentrate.

68. Defendants knew of Plaintiff's disabilities, regarded Plaintiff as disabled, and had a record of Plaintiff's disabilities.

69. Defendants knew of Plaintiff's wife's disabilities, regarded Plaintiff's wife as disabled, and had a record of Plaintiff's wife's disabilities.

70. Plaintiff was discriminated against on the basis of being disabled, perceived as disabled and/or being associated with a person with disabilities.

71. With a reasonable accommodation that would have placed no undue hardship on Defendants, Plaintiff could have performed the essential functions of his position.

72. Defendants violated the ADA by failing to accommodate Plaintiff's and Plaintiff's wife's disabilities or engaging in the interactive process with Plaintiff.

73. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's federally protected rights.

74. As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future lost wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT TWO
**(Discrimination in Violation of the ADA)**

75. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

76. Defendants violated the ADA when they terminated Plaintiff's employment because of his and his wife's disabilities.

77. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's federally protected rights.

78. As a result of Defendants unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT THREE
### (Retaliation in Violation of the ADA)

79. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

80. Plaintiff participated in protected activities under the ADA by, among other things, requesting a reasonable accommodation and complaining of continued harassment.

81. By terminating his employment after his requests and complaints, Defendants unlawfully retaliated against Plaintiff in violation of the ADA.

82. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

83. As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer damages, including past wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT FOUR
### (Failure to Reasonably Accommodate in Violation of the NYSHRL)

84. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

85. Plaintiff's conditions as described in this Complaint constitute a disabilites within the meaning of the NYSHRL.

86. Plaintiff's wife's conditions as described in this Complaint, including her kidney failure, constitute a disability within the meaning of the NYSHRL.

9

87. Defendants violated the NYSHRL by failing to accommodate Plaintiff's or Plaintiff's wife's disabilities or even engaging in the interactive process with Plaintiff.

88. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

89. As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future lost wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT FIVE
### (Discrimination in Violation of the NYSHRL)

90. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

91. Defendants violated the NYSHRL when they terminated Plaintiff's employment because of his and his wife's disabilities.

92. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

93. As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT SIX
### (Retaliation in Violation of the NYSHRL)

94. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

95. Plaintiff participated in protected activities under the NYSHRL by, among other

things, requesting a reasonable accommodation and complaining of continued harassment.

96. By terminating his employment after his requests and complaints, Defendants unlawfully retaliated against Plaintiff in violation of the NYSHRL.

97. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

98. As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer damages, including past wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT SEVEN
### (Aiding and Abetting Discrimination in Violation of the NYSHRL)

99. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

100. As a result of the aforementioned actions, Campbell discriminated against Plaintiff on account of his being disabled, perceived as disabled, and/or being associated with a person with disabilities with respect to the terms, conditions and privileges of his employment in violation of the NYSHRL.

101. Campbell violated the NYSHRL by aiding, abetting, inciting and coercing the unlawful discrimination set forth in this Complaint.

102. Campbell acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

103. As a result of the Campbell unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future lost wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT EIGHT
### (Violation of the FMLA)

104. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

105. Plaintiff's disabilities and Plaintiff's wife's disabilities were well known to Defendants.

106. When Plaintiff's wife suffered from kidney failure, qualifying Plaintiff for leave under the FMLA.

107. Defendant knew or should have known Plaintiff was planning to take FMLA leave to care for his wife but failed to advise him of his rights thereunder.

108. Asa a result of Plaintiff's termination by Defendants, an adverse employment action, they interfered with Plaintiff's ability to take FMLA and retaliated against him for being qualified for same.

## COUNT NINE
### (Violation of the PFL)

109. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

110. Plaintiff's disabilities and Plaintiff's wife's disabilities were well known to Defendants.

111. When Plaintiff's wife suffered from kidney failure, qualifying Plaintiff for leave under the PFL.

112. Defendant knew or should have known Plaintiff was planning to take PFL leave to care for his wife but failed to advise him of his rights thereunder.

113. Asa a result of Plaintiff's termination by Defendants, an adverse employment action, they interfered with Plaintiff's ability to take PFL and retaliated against him for being qualified for same.

## COUNT TEN
**(Failure to Minimum Wages)**

114. Plaintiff reallege and incorporate by reference all allegations in all preceding paragraphs.

115. Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

116. At all times relevant, Plaintiff has been employees of Defendants, and Defendants have been employers of Plaintiff within the meaning of the NYLL §§650 *et seq.*, and the supporting New York State Department of Labor Regulations.

117. At all times relevant, Plaintiff has been covered by the NYLL.

118. Defendants have failed to pay Plaintiff the minimum hourly wages to which he is entitled under the NYLL and the supporting New York State Department of Labor Regulations.

119. Pursuant to the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, Defendants have been required to pay Plaintiff the full minimum wage at a rate of for all hours worked up to forty in a workweek, plus time and a half for all weeks in which he worked in excess of forty hours a week.

120. Through their knowing or intentional failure to pay minimum hourly wages to Plaintiff, Defendants willfully violated the NYLL, Article 19, §§650 *et seq.*, and the supporting New York State Department of Labor Regulations.

121. Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants his unpaid minimum wages, liquidated damages as provided for by the

NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## COUNT ELEVEN
**(Wage Notice Violations– NYLL)**

122. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

123. Defendants failed to furnish Plaintiff with wage notices as required by NYLL §195(1), in English or in the language identified by each employee as their primary language, at the time of hiring and with any change in pay, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL §191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary

124. Due to Defendants' violations of NYLL §195(1), Plaintiff is entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiffs with proper wage notices, or a total of five thousand dollars, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL §198(1-b).

## COUNT TWELVE
**(Wage Statement Violations– NYLL)**

125. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

126. Defendants failed to furnish Plaintiff with a statement with every payment of wages

as required by NYLL §195(3), listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular and overtime hours worked.

127. Due to Defendants' violations of NYLL §195(3), Plaintiffs is entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiffs with proper wage statements, or a total of five thousand dollars, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL §198(1-d).

## **COUNT THIRTEEN**
**(Failure to Pay Commissions – NYLL)**

128. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

129. Pursuant to NYLL §191-c(1), "[w]hen a contract between a principal and a sales representative is terminated, all earned commissions shall be paid within five business days after termination or within five business days after they become due in the case of earned commissions not due when the contract is terminated."

130. Pursuant to NYLL §191-c(3), "[a] principal who fails to comply with the provisions of this section concerning timely payment of all earned commissions shall be liable to the sales representative in a civil action for double damages. The prevailing party in any such action shall be entitled to an award of reasonable attorney's fees, court costs, and disbursements."

131. At all relevant times hereto, Plaintiff was a "sales representative" within the meaning of the NYLL.

15

132. At all times relevant hereto, Defendants were Plaintiff's "employers" and "principals" within the meaning of NYLL.

133. Pursuant to the NYLL, Defendants were required to provide Plaintiff with a written agreement setting forth, *inter alia*, how and when his commissions were earned.

134. Defendants failed to provide such a written contract to Plaintiff.

135. Defendants' failure to provide Plaintiff with a written agreement constitutes a violation of the NYLL.

136. Plaintiff performed work for which he was entitled to commissions, as agreed between Plaintiff and Defendants.

137. Based on the foregoing, and pursuant to the NYLL, Plaintiff seeks damages against Defendants, jointly and severally, for unpaid commissions, liquidated damages, pre- and post-judgment interest, reasonable attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT FOURTEEN
### (Slander)

138. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

139. Campbell engaged in conduct that constituted slander per se by advising customers that Plaintiff was stealing and using drugs at work.

140. As a result of the Campbell unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## JURY DEMAND

141. Plaintiff demands a trial by jury on all causes of action and claims with respect to

which he has a right to a jury trial.

## BCL §630 NOTICE AND DEMAND

142. Pursuant to New York Business Corporation Law ("BCL") §630, Plaintiff hereby advises that it intends to hold its top ten shareholders and/or members liable for the unpaid wages referenced herein. Further, Plaintiff demands that Sunrise permit an examination of its record of shareholders under BCL §624 so that liability may be imposed on its top ten shareholders for the unpaid wages referenced herein.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief as follows:

A. Awarding Plaintiff back pay, front pay, compensatory damages, liquidated damages, interest, attorneys' fees and costs for his discrimination, interference, and retaliation claims under federal and state law;

B. Awarding Plaintiff damages for the amount of unpaid wages under the NYLL, including minimum wages and commissions;

C. Awarding Plaintiff liquidated damages in an amount equal to wages owed pursuant to 29 U.S.C. §216(b) and liquidated damages and other statutory remedies pursuant to the NYLL;

D. Awarding Plaintiff, compensatory damages, liquidated damages, interest, attorneys' fees and costs for his wage claims under state law;

E. Awarding pre- and post-judgment interest as permitted under the law;

F. Awarding the costs of this action together with reasonable attorneys' fees; and

G. Granting such other and further relief as this Court deems necessary and proper.

Dated: January 27, 2023
      Syosset, New York

                Respectfully submitted,
                **LAW OFFICES OF YALE POLLACK, P.C.**

                By: */s/ Yale Pollack*
                     Yale Pollack, Esq.
                *Attorneys for Plaintiff*
                66 Split Rock Road
                Syosset, New York 11791
                (516) 634-6340
                ypollack@yalepollacklaw.com